RECEIVED

NOV 1 2 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

LOUISIANA CRAWFISH PRODUCERS
ASSOCIATION - WEST, ET AL.

CIVIL ACTION NO.: 10-0348
**THIS APPLIES TO ALL CASES**

VERSUS

JUDGE DOHERTY

AMERADA HESS CORPORATION, ET AL.

MAGISTRATE JUDGE HANNA


### MEMORANDUM RULING

Currently pending before the Court are two motions for reconsideration, or alternatively, motions for summary judgment, whereby defendants, The Dow Chemical Company ("Dow"), Florida Gas Transmission Company ("Florida Gas"), and Southern Natural Gas Company ("SNG"), seek reconsideration of this Court's prior Ruling, whereby the Court denied defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), finding plaintiffs had pleaded sufficient facts to state a claim of maritime tort against the foregoing defendants.[1] One motion is filed by defendants The Dow Chemical Company ("Dow"), Florida Gas Transmission Company ("Florida Gas"), and Southern Natural Gas Company ("SNG").[2] These defendants are alleged to have dredged pipeline canals from a vessel on navigable waters during pipeline construction.[3] Pursuant to an Order issued on August 18, 2015[4], defendant Associated Electric & Gas Insurance Services Limited ("AEGIS"),

---

[1]Docs. 416, 417

[2]Doc. 549

[3]Doc. 280, pp. 22-23, 27-28, 46

[4]Doc. 564

the insurer of SNG, was permitted to adopt the foregoing motion for reconsideration.[5] The other motion, filed by Dow alone, addresses plaintiffs' allegations that Dow dredged navigation access canals to the sites of wells from a vessel on navigable waters.[6] Both motions assert this Court should reconsider its prior Ruling and find plaintiffs have failed to state a claim against defendants for maritime tort[7], arguing the Fifth Circuit's Ruling in a companion case, *In re Louisiana Crawfish Producers*, 772 F.3d 1026 (5ᵗʰ Cir. 2014), should change the outcome of this Court's prior Ruling.[8] For the following reasons, the motion filed by Dow, Florida Gas, and SNG is GRANTED IN PART and DENIED IN PART[9], and the motion filed by Dow is DENIED.[10]

## I.    Background

Plaintiffs are former and current commercial crawfishermen, who are all members of the Louisiana Crawfish Producers Association-West, and who fish or fished the Atchafalaya Basin waters to harvest crawfish. Plaintiffs bring this suit to recover damages they allege they have incurred due to defendants' activities of oil and gas exploration, pipeline operation and maintenance,

---

[5]Pursuant to a prior Order of the Magistrate Judge issued September 16, 2010, "all Insurer Defendants shall be deemed to have adopted any generally applicable dispositive motion filed by any other Insurer Defendant," unless an Insurer Defendant files a "notice of its intention not to adopt a particular motion." [Docs. 226-2, p. 2; 227] As none of the Insurer Defendants have filed a notice to opt out, the Court will construe AEGIS' adoption of defendants' motion as applicable to the following additional insurers of SNG: Century Indemnity Company, as successor to Insurance Company of North America and Century Indemnity Company, as successor to CIGNA Specialty Insurance Company, f/k/a California Union Insurance Company (collectively, "Century Indemnity"); St. Paul Fire and Marine Insurance Company; Certain Underwriters at Lloyd's London; and Zurich Insurance Company.

[6]Doc. 548; *see also* Doc. 280, pp. 45-46

[7]Doc. 549-1, p. 6; Doc. 548-1, p. 3

[8]Doc. 549-1, p. 6; Doc. 548-1, p. 3

[9]Doc. 549

[10]Doc. 548

and dredging activities conducted in the Atchafalaya Basin.

Plaintiffs originally filed this suit in state court seeking relief under Louisiana tort law and the general maritime law.[11] While in state court, plaintiffs' claims brought under Louisiana law were dismissed pursuant to an exception of no cause of action.[12]  However, the state district court expressly recognized plaintiffs' claims under maritime law were reserved.[13]  On March 1, 2010, the case was removed to this Court by AEGIS, the insurer of former defendant Anadarko Petroleum Corp.[14]  Subject matter jurisdiction supporting removal was based upon 28 U.S.C. §1331 (federal question jurisdiction), as an action falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201, *et seq*.  Accordingly, at the time of removal, plaintiffs' only claims that remained pending were claims brought under the general maritime law.

On May 16, 2011, plaintiffs filed their Fifth Supplemental and Amended Complaint with this Court. Plaintiffs allege beginning in the 1940's, certain defendants began to explore for and/or produce oil and gas in the navigable waters of the Atchafalaya Basin in the Buffalo Cove Area, identified as three water management units which, absent the defendants' activities, would be hydrologically connected "allowing for free and unfettered commercial navigation and water flows between and amongst same."[15]  Plaintiffs state they "make their living by way of navigation upon

---

[11]Doc. 1-6, pp. 7-10, 20

[12]The decision dismissing the state law claims was affirmed by the Louisiana Third Circuit Court of Appeal, and that decision is now final.

[13] Doc. 162-2, p. 6

[14]In September 2013, Anadarko settled the claims asserted against it by plaintiffs. [Doc. 445; Doc. 481] However, AEGIS is alleged to have insured SNG, as well as other defendants who have since settled. [*See* Doc. 1-7, pg. 25-26 and 36-37].

[15]Doc. 280, pp. 2-6.

the waters of the Buffalo Cove Area," and assert they have been damaged as a result of defendants' "dredging of canals through the navigable waters of the Atchafalaya Basin for the purpose of allowing drilling vessels to gain access to drilling and/or production sites."[16] According to plaintiffs, in connection with defendants' dredging activities, artificial dams were created with spoil and dredge material, which block the natural flow of water in the Buffalo Cove area, obstruct navigation, "damage and/or destroy the natural plant and animal life," and "damage and/or destroy the health of the water upon which Plaintiffs rely for the successful operations of their businesses. . . ."[17] The canals and associated dams, together with the discharge of pollutants and spoil/dredge material, are alleged to have impacted the quality of the water to the point that oxygen levels were severely reduced, causing the crawfish harvest to be adversely affected or eliminated.[18]

As a result of these activities, plaintiffs allege they have suffered economic losses, among other items of damages, because the Buffalo Cove Area is no longer a viable location for commercial crawfishing.[19] Plaintiffs uniformly claim loss of their livelihood (*e.g.* lost earnings, loss of earning capacity, lost catches, lost ability to catch wildlife in the Atchafalaya Basin), as well as "natural resource damages," loss of access to the Atchafalaya Basin, and loss of navigation.[20] They additionally claim property damages, including damages for the death of crawfish while in traps, the

---

[16]Doc. 280, pp. 2, 3

[17]Doc. 1-6, p. 4; Doc. 280, pp. 2-3

[18]Doc. 1-6 p. 6.

[19]Doc. 280, p. 76

[20]*See e.g.* Doc. 280, p. 77

costs of repair and replacement of traps, and the cost of additional traps, as well as other damages.[21]

In response, defendants collectively filed motions to dismiss pursuant to Rule 12(b)(6), arguing plaintiffs had failed to state a cause of action for maritime tort, and thus, this matter should be dismissed with prejudice in its entirety.[22] Thereafter on August 1, 2012, the Magistrate Judge issued a Report and Recommendation, wherein he concluded that plaintiffs had stated a maritime tort cause of action against those defendants (and their predecessor companies) who were alleged to have engaged in dredging activities, which led to the conditions alleged to have damaged the Buffalo Cove area where the plaintiffs claimed to have previously fished.[23]  Those defendants included   Florida Gas, Dow, and SNG, movants herein.   The Magistrate Judge additionally concluded plaintiffs had failed to state a maritime tort cause of action against those defendants who were alleged to have engaged in pipeline construction and repair, but not dredging, finding those defendants were not engaged in traditional maritime activities.[24]  On January 18, 2013, this Court adopted the Report and Recommendation, with some modification as to its factual findings.[25]

On February 13, 2013, plaintiffs filed a motion for reconsideration, whereby they moved the Court to reconsider its dismissal of those defendants who the Court found to have engaged in non-traditional maritime activities.[26]  The Court denied the relief requested by plaintiffs in their motion

---

[21]See e.g. Doc. 280, p. 77

[22]Docs. 328-333, 340

[23]Doc. 379, pp. 28-30, 34

[24]Doc. 379, p. 30

[25]Docs. 416, 417

[26]Doc. 420-1

for reconsideration.[27] Thereafter, plaintiffs filed an appeal of this Court's Ruling with the United

States Court of Appeals for the Fifth Circuit. On November 24, 2014, the appellate court affirmed

this Court's decision. *See In re Louisiana Crawfish Producers*, 772 F.3d 1026 (5th Cir. 2014). While

the appeal was pending, the Magistrate Judge held a settlement conference, and all remaining

defendants except Dow, Florida Gas, and SNG settled their claims.[28] On July 31, 2015, Dow, Florida

Gas, and SNG filed the motions for reconsideration now pending before this Court.

## II.    Standard of Review

Defendants move this Court to reconsider its prior Ruling denying their motions to dismiss,

again asking this Court to dismiss plaintiffs' suit for failure to state a claim of maritime tort.

Alternatively, defendants move for summary judgment dismissing plaintiffs' claims, contending

"because this motion presents purely legal issues and is based on the facts as pleaded by Plaintiffs,

. . . [defendants] move for summary judgment based on the Fifth Circuit's ruling."[29]

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims

or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the

entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ.

P. 54(b). "[W]hen a district court rules on an interlocutory order, it is free to reconsider and reverse

its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening

change in or clarification of the substantive law." *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206,

210 (5th Cir. 2010)(internal quotation marks omitted). As this Court's prior Ruling denying

---

[27]Docs. 424, 425

[28]Doc. 444.

[29]Docs. 549-1, p. 8; 548-1, p. 4

defendants' motions to dismiss was interlocutory, the Court may reconsider that Ruling.

However, because the Court will consider the evidence submitted by plaintiffs in support of their memorandum in opposition to the pending motions, the Court will decide the pending motions as motions for summary judgment, pursuant to the standard set forth in Fed. R. Civ. P. 56.[30] When a motion to dismiss is converted into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Here, all parties have received adequate notice that this motion may be treated as one for summary judgment - indeed, all parties have explicitly addressed that particular procedural vehicle in their briefing - and all parties have had reasonable opportunity to respond.[31]

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[30]*See e.g. Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1283-84 (5th Cir. 1990)("Where matters outside the pleadings are considered by the district court on a motion to dismiss, Rule 12(b) requires the court to treat the motion as one for summary judgment. . . .")

[31]*See e.g. Mackey v. Owens*, 182 F.3d 915, *2 (5th Cir.1999)(a court need not provide the parties with "express notice" that a motion to dismiss will be treated as a motion for summary judgment, as "the simple act of placing matters outside the pleadings before the court provides adequate notice"); *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 196 (5th Cir.1988).

(B) showing that the materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce admissible evidence to
support the fact.

*Id.* at § (c)(1).

As summarized by the Fifth Circuit:

When seeking summary judgment, the movant bears the initial responsibility
of demonstrating the absence of an issue of material fact with respect to those issues
on which the movant bears the burden of proof at trial. However, where the
nonmovant bears the burden of proof at trial, the movant may merely point to an
absence of evidence, thus shifting to the non-movant the burden of demonstrating by
competent summary judgment proof that there is an issue of material fact warranting
trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury
to return a verdict for that party" is a full trial on the merits warranted. *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)(internal citations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility

determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d

1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard

all evidence favorable to the moving party that the jury is not required to believe, and should give

credence to the evidence favoring the nonmoving party as well as that evidence supporting the

moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368,

373 (5th Cir.2001).

## III.   Analysis

Defendants contend the Fifth Circuit's Ruling in *In re Louisiana Crawfish Producers*

"clarif[ies] the substantive law"[32] and "provides recent, controlling guidance . . . as to the appropriate

level of generality to be applied in considering whether a plaintiff has sufficiently pleaded a maritime

---

[32]Doc. 549-1, p. 8

tort."[33] According to defendants, once this "controlling guidance" is applied to the matter before this Court, dismissal of plaintiffs' claims is required "as a matter of law."[34] The Court disagrees.

In *Crawfish Producers*, the Fifth Circuit affirmed this Court's dismissal of maritime tort claims against certain defendants "alleged to have engaged in oil and gas exploration but not dredging." *Crawfish Producers*, 772 at 1028. The allegations against the defendants in *Crawfish Producers* were that one "placed cement mats on exposed sections of an existing pipeline, impeding water flows and commercial navigation," and the other "built a pipeline on an existing spoil bank that it had leveled using bulldozers, obstructing gaps in the spoil bank and thereby impeding water flows and commercial navigation." *Id.* at 1028. There were no allegations the defendants in *Crawfish Producers* conducted any type of dredging of navigable waterways, nor used any type of vessel at all in connection with their projects. *Id.*[35]

The Fifth Circuit recited the test for stating a maritime tort as follows:

> To state a claim for a maritime tort, the plaintiff must allege facts sufficient to satisfy the "location test" and "connection test." The location test is satisfied if the tort occurred on navigable waters or if the injury occurred on land but was caused by a vessel on navigable waters. *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043. The tort "occurred on" navigable waters if the harm "took effect" there. *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir.1999) (per curiam). The connection test is satisfied if two conditions are met. *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043. First, "the general features of the type of incident involved" must have "a potentially disruptive impact on maritime commerce." *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 364 n. 2, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)). The court uses "a description of the incident at an intermediate level of possible generality," *id.* at 538, 115 S.Ct. 1043, that is neither too broad to distinguish among cases nor too narrow to recognize potential effects

---

[33]Doc. 548, p. 1

[34]Doc. 549-1, p. 8; *see also* Doc. 548-1, p. 4

[35]*See also* Doc. 379, p. 30

> on maritime commerce, *id.* at 538-39, 115 S.Ct. 1043. Second, "the general character of the activity giving rise to the incident" must show "a substantial relationship to traditional maritime activity." *Id.* at 534, 115 S.Ct. 1043 (quoting *Sisson*, 497 U.S. at 365, 364 & n. 2, 110 S.Ct. 2892) (internal quotation marks omitted). The court considers "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id.* at 539-40, 115 S.Ct. 1043.

*Id.* at 1029 (footnote omitted).[36]

After finding the location test and the first prong of the connection test "were easily satisfied,"[37] the Court concluded plaintiffs had "not alleged facts sufficient to satisfy the second prong of the connection test, however." The Fifth Circuit reasoned as follows:

> The key issue is the appropriate level of generality at which to describe "the general character of the activity giving rise to the incident," . . . [*Grubart* at 534] (quoting *Sisson*, 497 U.S. at 365, 364, 110 S.Ct. 2892) (internal quotation marks omitted). The plaintiffs urge the general character of the activity is "negligent/intentional construction activity resulting in the obstruction of navigable waters with spoil," while the defendants maintain it is "pipeline construction and repair," as the court found.

------------------------

[36]The Fifth Circuit noted that although *Grubart* addressed the test for admiralty jurisdiction, "'The test to determine the existence of a cause of action in maritime tort is identical with that applied to determine jurisdiction in admiralty.'" *Crawfish Producers* at 1029, n.1 (quoting *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1265 (5th Cir. 1986)).

[37]As explained by the Fifth Circuit:

> The location test is easily satisfied: The plaintiffs allege the defendants' activities impeded water flows and commercial navigation, meaning the harm "took effect" on navigable waters. *See Egorov*, 183 F.3d at 456. Likewise, the first prong of the connection test is met: "[T]he general feature[ ] of the type of incident involved," *Grubart*, 513 U.S. at 534, 115 S.Ct. 1043 (quoting *Sisson*, 497 U.S. at 363, 110 S.Ct. 2892), is the obstruction of water flows. Although such obstruction does not always disrupt maritime commerce, it has the potential to do so, which is all that is required. *See id.*

*In re Crawfish Producers*, 772 F.3d at 1029.

The latter description is the better one. The plaintiffs' characterization conflicts with *Sisson*'s instruction, 497 U.S. at 364, 110 S.Ct. 2892, "that the relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose," and warning not "to focus more particularly on the causes of the harm," *id.* at 365, 110 S.Ct. 2892. Plaintiffs' description is merely a statement of the cause of the harm. Were we to use the characterization "negligent/intentional construction activity resulting in the obstruction of navigable waters with spoil," there would be no more specific cause. As a result, "the general character of the activity giving rise to the incident" is "pipeline construction and repair."

The only remaining issue is whether "pipeline construction and repair" shows "a substantial relationship to traditional maritime activity." The caselaw shows it does not, so the plaintiffs have failed to state a claim for a maritime tort against DIGC and Willbros.

*Id.* at 1029-30 (footnotes omitted).

As is evident from the language quoted above, the Fifth Circuit in *Crawfish Producers* set forth the jurisprudential test for stating a claim of maritime tort, as originally announced in *Sisson v. Ruby*, 497 U.S. 358 (1990), and later refined by *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). The Fifth Circuit then applied that long-standing jurisprudence to a particular set of facts, distinct from the factual allegations pertaining to these defendants. Thus, it appears what defendants in this matter actually seek is to have this Court apply the outcome of *Crawfish Producers* to the facts pertaining to these defendants. However, defendants have failed to persuade the Court the outcome in this matter should be the same.

In the matter before this Court, the only dispute between the parties for purposes of the pending motions is whether plaintiffs have satisfied the second element of the connection test - *i.e.*, whether "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart* at 534, 539. With regard to Dow, plaintiffs allege in their complaint that beginning in 1971, Dow "conducted operations in the Buffalo Cove

Area consisting of dredging a navigation access canal to the site of DOW's petrochemical well, Dow Chemical SL 411 Well No.1."[38] According to plaintiffs, Dow's dredging "caused to be deposited within the Buffalo Cove Area dredge spoil which created an impediment to commercial navigation and water flows within the fishing area then known as Lake Chicot."[39] Plaintiffs assert "the dredge spoil associated with this access canal remains to this day, an impediment to commercial navigation and water flows within the fishing area now known as Lake Chicot and/or 'Amerada' . . . ."[40]

Plaintiffs further allege from January 1973 to December 1973, Dow "conducted operations in the Buffalo Cove Area consisting of dredging a pipeline canal for the pipeline popularly known as the 'Dow Pipeline.'"[41] In connection with the dredging of their pipeline canal, Dow "caused spoil to be deposited throughout the entire length of the pipeline. . . ."[42] According to plaintiffs, Dow failed to comply with their permit issued by the U.S. Corps of Engineers, in that Dow failed to leave gaps in the spoil at specified intervals and in the manner required by the permit.[43] Plaintiffs allege the spoil associated with Dow's pipeline canal obstructed numerous bodies of water and natural drains, "created an impediment to commercial navigation and water flows within the fishing areas then known as Bay Barrone, Bay Tony, Ha Ha Bay, Bayou Leon, Beau Bayou, Cochon Bay, Oak Ridge and Back of Oak Ridge and further contributed to the unlawful damming of Bayou Cocodrie,

---

[38]Doc. 280, p. 45

[39]Doc. 280, p. 45

[40]Doc. 280, pp. 45-46

[41]Doc. 280, p. 46

[42]Doc. 280, p. 46

[43]Doc. 280, p. 46

Ha Ha Bay, Bay Tony, and Four Hundred Dollar Bayou and unlawfully obstructed the flow of numerous natural drains, coulees, sloughs, creeks, and other unnamed waterways it crossed."[44] Plaintiffs contend, "the dredge spoil associated with this pipeline remains to this day, an impediment to commercial navigation and water flows within the fishing areas and water bodies listed herein. . . ."[45]

In support of their opposition to defendants' motion, plaintiffs have submitted a document entitled, "Job Specifications," which is for "Construction" of a "Marine . . . Natural Gas Pipeline."[46] The first paragraph of the document, entitled "SCOPE," states, "This portion of the specifications covers the dredging of a flotation canal and pipe ditch between the east and west protection levees of the Atchafalaya Basin located in Iberville and St. Martin Parishes of the State of Louisiana . . . ."[47] The second paragraph, entitled "DREDGING," states, "The contractor shall furnish all labor, equipment, tools, materials and supervision necessary to dredge a flotation canal and pipe ditch suitable for barge laying a 16" diameter pipe line between the east and west protection levees of the Atchafalaya Basin."[48]

According to Dow, their "only alleged activity is 'dredging a navigation access canal to the site of Dow's petrochemical well. . . .'"[49] Dow argues, "When this allegation is characterized with

---

[44]Doc. 280, p. 46

[45]Doc. 280, p. 46

[46]Doc. 577-3, p. 1

[47]Doc. 577-3, p. 2

[48]Doc. 577-3, p. 2

[49]Doc. 548-1, p. 5

the appropriate level of generality, as recently clarified in *In re Crawfish Producers*, the activity relates to oil and gas exploration and production rather than traditional maritime activity."[50] Thus, Dow concludes plaintiffs have failed to plead a maritime tort. The Court disagrees.

As stated *Grubart*, for the second prong of the connection test:

> [W]e look to whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. We ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand. Navigation of boats in navigable waters clearly falls within the substantial relationship, storing them at a marina on navigable waters is close enough, whereas in flying an airplane over the water, as in swimming, the relationship is too attenuated.
>
> On like reasoning, the "activity giving rise to the incident" in this suit should be characterized as **repair or maintenance work on a navigable waterway performed from a vessel.** Described in this way, there is no question that the activity is substantially related to traditional maritime activity, for barges and similar vessels have traditionally been engaged in repair work similar to what Great Lakes contracted to perform here. See, *e.g.,* . . . *In re The V-14813*, 65 F.2d 789, 790 (CA5 1933)("There are many cases holding that a dredge . . . employed on navigable waters, is subject to maritime jurisdiction . . . .)

*Grubart*, 513 U.S. 539-40 (internal citations omitted; emphasis added). Notably, the Supreme Court in *Grubart* did not characterize defendant's activity as merely "repair or maintenance work," but rather, as "repair or maintenance work on a navigable waterway performed from a vessel." *Id*. at 540.

While Dow's activity in this case was certainly "oil and gas exploration and production," the Court finds that description of the activity to be overly broad. As noted in *Grubart*, "to suggest that such hypergeneralization ought to be the rule would convert *Sisson* into a vehicle for eliminating admiralty jurisdiction." *Id*. at 542. Indeed, were the Court to accept Dow's broad characterization, it would ignore the salient facts that the particular oil and gas exploration and production activity at

---

[50]Doc. 548-1, p. 51

issue was the dredging of a navigation canal, conducted from a vessel, on navigable waters. Accordingly, the Court finds that at an intermediate level of generality, the incident here is properly characterized as dredging of a navigation canal, conducted from a vessel, on navigable waters, presumably to facilitate Dow's navigation to its well site.  Such activity shows a substantial connection to maritime commerce, as its very purpose is to allow for improved navigation to Dow's well site. *Sisson* at 367 (in addition to "navigation," traditional maritime activities include "at least ... any other activities traditionally undertaken by vessels, commercial or noncommercial"); *Grubart* at 540 (dredge and dock company's bridge repair and maintenance work from a vessel on a navigable waterway was substantially related to traditional maritime activity); *In re The V-14813*, 65 F.2d at 790 ("[t]here are many cases holding that a dredge . . . employed on navigable waters, is subject to maritime jurisdiction . . ."); *Lakes of Gum Cove Hunting & Fishing, L.L.C. v. Weeks Marine, Inc.*, 182 F.Supp.2d 537, 544-45 (W.D.La. 2001)(admiralty jurisdiction existed over marshland owner's claim against owner of dredging vessel, due to spoil dredged and dumped on marshland); *In re Ingram Barge Co.*, 2007 WL 837181, *6 (E.D.La.).  In light of the foregoing, the Court finds plaintiffs have sufficiently set forth a claim of maritime tort against Dow.  Accordingly, the motions for reconsideration, or alternatively, summary judgment are DENIED with respect to plaintiffs' claims asserted against Dow.[51]

---

[51]To the extent Dow relies upon *In re Katrina Canal Breaches Litigation*, 324 Fed.Appx. 370 (5th Cir. 2009), an unpublished decision which is not precedent, the Court finds that case to be distinguishable on its facts. In that case, the Fifth Circuit found defendants' activity was not substantially related to traditional maritime activity, as plaintiffs' claims did "not raise issues of navigation or other more traditional maritime activities." *Id.* at 380. In distinguishing *Grubart*, the Fifth Circuit noted there, "the repair and maintenance work was done to improve a navigable river," whereas in *Canal Breaches*, "the canal-improvement project was carried out in essentially a drainage ditch, to improve local drainage and prevent local flooding." *Id.* The Court thus found "the improvement project implicated only local, land-based interests, and the connection, if any, to admiralty law is 'wholly fortuitous.'" *Id.* In this matter, as set forth above, the undisputed allegations are that Dow's activities were conducted on a

However, the same result cannot be reached with regard to plaintiffs' claims against Florida Gas and SNG. As to Florida Gas, plaintiffs do allege in their complaint Florida Gas dredged "a series of interconnected pipeline canals," which "caused spoil to be deposited throughout the entire length of the pipelines," thereby obstructing "numerous bodies of water and natural drains," and creating "an impediment to commercial navigation and water flows. . . ."[52] Nevertheless, the evidence submitted by plaintiffs in support of their opposition does not support their assertion that Florida Gas conducted any dredging activities at all. Plaintiffs have submitted the application of Florida Gas for a permit from the U.S. Army Corps of Engineers for "an 8-3/4 inch outside diameter natural gas pipeline that will be constructed by floatation process in an open canal of approximately forty (40) feet in width."[53] According to plaintiffs, "This evidence supports Plaintiffs' allegations that FLORIDA GAS engaged in dredging activities, or at the very least, creates a question of fact as to this matter."[54]

In response, Florida Gas notes the permit application states nothing at all about dredging, and "specifies that a pipeline would 'be constructed by floatation process in an open canal of approximately forty (40) feet in width.'"[55] According to Florida Gas, "In other words, Florida Gas sought permission to drop a pipeline off a floating barge into an existing canal."[56] Florida Gas

---

navigable waterway, to aid in navigation.

[52]Doc. 280, pp. 27-28, ¶ 161

[53]Doc. 577-3, p.4

[54]Doc. 577-3, pp. 3-4

[55]Doc. 579, p.5

[56]Doc. 579, p. 5

further contends had it "dredge[d] the subject 'open canal,'" permission from the Corps would have been required.[57]  Florida Gas has additionally submitted the deposition testimony of Dennis Alters, who it describes as Florida Gas's corporate representative with the "most knowledge" of the Florida Gas Pipeline, permits, and construction.[58]  Mr. Alters testified he had reviewed all of Florida Gas's construction notes prepared foot-by-foot when the pipeline was constructed, and there is no mention of any dredging activity at all.[59]  He further testified had Florida Gas dredged any pipeline canals, that would be reflected in the construction notes.[60]  According to Mr. Alters, the construction notes reflect pre-existing canals, likely from a timber company, and that "Florida Gas's pipe was welded foot by foot, . . . and it was simply lowered in with the soundings already existing" from a small barge.[61]  Had Florida Gas dug canals, then the construction notes would reflect "how much canal diggage would be, [and] how much you would advance on a foot-by-foot basis. . . ."[62]

The testimony submitted by Florida Gas is uncontradicted and unimpeached. Accordingly, the Court finds plaintiffs have not carried their "burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey*, 16 F.3d at 618. As the Court finds plaintiffs have failed to allege a maritime tort against Florida Gas, plaintiffs' claims against Florida Gas are DISMISSED WITH PREJUDICE.

---

[57]Doc. 579, p. 5

[58]Doc. 579, pp. 5-6

[59]Doc. 579, p. 6

[60]Doc. 579, p. 6

[61]Doc. 579, p. 6; *see also* Doc. 579-1, pp. 4-5

[62]Doc. 579-1, pp. 5-6

Finally, with regard to SNG, plaintiffs similarly allege in their complaint that SNG dredged a pipeline canal, which caused spoil to be deposited throughout the entire length of the pipeline, thereby creating impediments to commercial navigation and water flows.[63] Defendants note, unlike with Dow and Florida Gas, plaintiffs have submitted no evidence relating to any dredging activity of SNG.[64] While plaintiffs state they "have reserved the right to supplement this opposition after the deposition of Southern Natural Gas which is set to take place in late September, 2015," plaintiffs have submitted no supplemental argument or evidence to date.[65] This case has been ongoing for over eleven years. Had the deposition of SNG uncovered any evidence of dredging by SNG, it was incumbent upon plaintiffs to produce it. Defendants have pointed "to an absence of evidence" supporting plaintiffs' claims, thus shifting to plaintiffs "the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey* at 618. Plaintiffs have failed to meet their burden. Accordingly, the Court finds plaintiffs have failed to state a claim of maritime tort against SNG, and therefore, plaintiffs' claims asserted against SNG are DISMISSED WITH PREJUDICE.

## IV.    Conclusion

In light of the reasons provided above, the motion for reconsideration, or alternatively summary judgment, filed on behalf of Dow, Florida Gas, and SNG[66] is GRANTED IN PART and DENIED IN PART. The motion is granted to the extent it seeks dismissal with prejudice of

---

[63]Doc. 280, pp. 22-23, ¶ 154

[64]Doc. 579, p. 5, n.5

[65]Doc. 577, p. 3

[66]Doc. 549

plaintiffs' claims asserted against Florida Gas, SNG, and SNG's insurers, AEGIS, Century Indemnity, St. Paul Fire and Marine Insurance Company, Certain Underwriters at Lloyd's London, and Zurich Insurance Company. The motion is denied to the extent it seeks dismissal of plaintiffs' claims asserted against Dow. The motion for reconsideration, or alternatively summary judgment, filed on behalf of Dow alone[67] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___12___ day of November, 2015.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[67]Doc. 548