RECEIVED

MAR 1 4 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| LOUISIANA CRAWFISH PRODUCERS ASSOCIATION - WEST, ET AL. | CIVIL ACTION NO.: 10-0348<br>**THIS APPLIES TO ALL CASES** |
| VERSUS | JUDGE DOHERTY |
| AMERADA HESS CORPORATION, ET AL. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Currently pending before the Court is a motion for reconsideration [Doc. 600] filed by plaintiffs Louisiana Crawfish Producers Association - West, et al. Pursuant to their motion, plaintiffs ask this Court to reconsider its dismissal of defendants Florida Gas Transmission Company ("Florida Gas") and Southern Natural Gas Company ("SNG"). [Doc. 600-1, p. 1; *see also* Doc. Nos. 594, 595] For the following reasons, plaintiffs' motion is DENIED.

**I.   Procedural History**

Plaintiffs are former and current commercial crawfishermen, who are all members of the Louisiana Crawfish Producers Association-West, and who fish or fished the Buffalo Cove area of the Atchafalaya Basin waters to harvest crawfish. Plaintiffs brought this suit to recover damages they allege they incurred due to defendants' activities of oil and gas exploration, pipeline operation and maintenance, and dredging activities conducted in the Atchafalaya Basin. According to the complaint, the defendants' activities have impacted the natural plant and animal life and depleted the oxygen levels of the water, causing the crawfish harvest to be adversely affected or eliminated.

On August 1, 2011, defendants collectively filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing plaintiffs had failed to state a cause of action for maritime tort, and thus, this

matter should be dismissed with prejudice in its entirety. [Doc. Nos. 328-333, 340] On August 1, 2012, the Magistrate Judge issued a Report and Recommendation, wherein he concluded that plaintiffs had stated a maritime tort cause of action against those defendants (and their predecessor companies) who were alleged to have engaged in dredging activities, which led to the conditions alleged to have damaged the Buffalo Cove area where the plaintiffs claimed to have previously fished. [Doc. 379, pp. 28-30, 34] Those defendants included Dow, Florida Gas and SNG. The Magistrate Judge additionally concluded plaintiffs had failed to state a claim against those defendants who were alleged to have engaged in pipeline construction and repair, but not dredging, finding those defendants were not engaged in traditional maritime activities. [Doc. 379, p. 30] On January 18, 2013, this Court adopted the Report and Recommendation, with some modification as to its factual findings. [Doc. Nos. 416, 417]

On February 13, 2013, plaintiffs filed a motion for reconsideration, whereby they moved the Court to reconsider its dismissal of those defendants who the Court found to have engaged in non-traditional maritime activities. [Doc. 420-1] The Court denied the relief requested by plaintiffs in their motion for reconsideration. [Doc. Nos. 424, 425] Thereafter, the judgment was affirmed by the United States Court of Appeals for the Fifth Circuit. [Doc. 513] While the appeal was pending, the Magistrate Judge held a settlement conference, and all remaining non-insurer defendants except Dow, Florida Gas, and SNG settled their claims. [Doc. 444]

On July 31, 2015, Dow, Florida Gas and SNG filed motions for reconsideration, or alternatively, motions for summary judgment, which were adopted by SNG's insurers. [Doc. Nos. 548, 549, 564] Pursuant to their motions, defendants sought dismissal with prejudice of plaintiffs' claims for maritime tort, arguing plaintiffs could not meet the "connection test" of *Grubart*, as

required to state a claim of maritime tort.[1] [Doc. 549-1, pp. 6, 12] Because plaintiffs submitted evidence in support of their opposition to defendants' motions, the Court converted the motions into motions for summary judgment. [Doc. 594, p. 7]

On November 12, 2015, this Court issued its Ruling finding plaintiffs had failed to sufficiently allege maritime tort claims against Florida Gas and SNG, and dismissed the claims against Florida Gas and SNG with prejudice. [Doc. 595] The Court denied Dow's motion, leaving Dow the sole remaining defendant in this case.[2] [Id.] With regard to Florida Gas, the Court found as follows:

> As to Florida Gas, plaintiffs do allege in their complaint Florida Gas dredged "a series of interconnected pipeline canals," which "caused spoil to be deposited throughout the entire length of the pipelines," thereby obstructing "numerous bodies of water and natural drains," and creating "an impediment to commercial navigation and water flows. . . ." Nevertheless, the evidence submitted by plaintiffs in support of their opposition does not support their assertion that Florida Gas conducted any dredging activities at all. Plaintiffs have submitted the application of Florida Gas for a permit from the U.S. Army Corps of Engineers for "an 8-3/4 inch outside diameter natural gas pipeline that will be constructed by floatation process in an open canal of approximately forty (40) feet in width." According to plaintiffs, "This evidence supports Plaintiffs' allegations that FLORIDA GAS engaged in dredging activities, or at the very least, creates a question of fact as to this matter."
>
> In response, Florida Gas notes the permit application states nothing at all about dredging, and "specifies that a pipeline would 'be constructed by floatation process in an open canal of approximately forty (40) feet in width.'" According to Florida Gas, "In other words, Florida Gas sought permission to drop a pipeline off a floating barge into an existing canal." Florida Gas further contends had it "dredge[d] the subject 'open canal,'" permission from the Corps would have been required. Florida Gas has additionally submitted the deposition testimony of Dennis Alters, who it describes as Florida Gas's corporate representative with the "most knowledge" of the Florida Gas Pipeline, permits, and construction. Mr. Alters

---

[1] *See Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

[2] Dow acknowledged it had dredged a navigation canal in the affected waters, and the Court found plaintiffs had sufficiently set forth a claim of maritime tort against Dow. [Doc. 548-1, pp. 5, 15]

> testified he had reviewed all of Florida Gas's construction notes prepared foot-by-foot when the pipeline was constructed, and there is no mention of any dredging activity at all. He further testified had Florida Gas dredged any pipeline canals, that would be reflected in the construction notes. According to Mr. Alters, the construction notes reflect pre-existing canals, likely from a timber company, and that "Florida Gas's pipe was welded foot by foot, . . . and it was simply lowered in with the soundings already existing" from a small barge. Had Florida Gas dug canals, then the construction notes would reflect "how much canal diggage would be, [and] how much you would advance on a foot-by-foot basis. . . ."
>
> The testimony submitted by Florida Gas is uncontradicted and unimpeached. Accordingly, the Court finds plaintiffs have not carried their "burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey*, 16 F.3d at 618. As the Court finds plaintiffs have failed to allege a maritime tort against Florida Gas, plaintiffs' claims against Florida Gas are DISMISSED WITH PREJUDICE.

[Doc. 594, pp. 16-17 (footnotes omitted)]

With regard to SNG, the Court found as follows:

> [P]laintiffs similarly allege in their complaint that SNG dredged a pipeline canal, which caused spoil to be deposited throughout the entire length of the pipeline, thereby creating impediments to commercial navigation and water flows. Defendants note, unlike with Dow and Florida Gas, plaintiffs have submitted no evidence relating to any dredging activity of SNG. While plaintiffs state they "have reserved the right to supplement this opposition after the deposition of Southern Natural Gas which is set to take place in late September, 2015," plaintiffs have submitted no supplemental argument or evidence to date. This case has been ongoing for over eleven years.[3] Had the deposition of SNG uncovered any evidence of dredging by SNG, it was incumbent upon plaintiffs to produce it. Defendants have pointed "to an absence of evidence" supporting plaintiffs' claims, thus shifting to plaintiffs "the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey* at 618. Plaintiffs have failed to meet their burden. Accordingly, the Court finds plaintiffs have failed to state a claim of maritime tort against SNG, and therefore, plaintiffs' claims asserted against SNG are DISMISSED WITH PREJUDICE.

[Id. at 18 (footnotes omitted)]

---

[3] The Court notes this case was filed in state court in 2004; it was removed to this Court in 2010.

By the motion now pending before this Court, plaintiffs seek reconsideration of this Court's Order dismissing Florida Gas and SNG with prejudice.

## II. Standard of Review

As this Court dismissed the claims against Florida Gas and SNG with prejudice, the Order constitutes a final judgment of dismissal against those entities. *See e.g. Marshall v. Kansas City Southern Ry. Co.*, 378 F.3d 495, 499-500 (5th Cir. 2004). Where a motion for reconsideration of a prior judgment on the merits is filed within 28 days of rendition of the judgment, the motion falls under Fed. R. Civ. P. 59(e). *Dudenhefer v. Davol, Inc.*, 52 F.3d 1068, *2 (5th Cir. 1995).

> A Rule 59(e) motion calls into question the correctness of a judgment. This Court has held that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. Rather, Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly.

*Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir.2004)(internal alterations, quotation marks and citations omitted).

While a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration arising under Rule 59(e), such discretion is not limitless. *Templet* at 479 (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990). The Fifth Circuit has identified two judicial imperatives relating to such a motion: "1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Id.* (citing *Lavespere* at 174). "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Id.*; *see also ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847

(5th Cir. 2006)("Under extraordinary circumstances, a court may entertain a motion for reconsideration in the light of evidence not in the summary judgment record."). When a party seeks to upset a summary judgment by producing additional evidence, a court should consider the following factors: "(1) the reasons for the moving party's default, (2) the importance of the omitted evidence to the moving party's case, (3) whether the evidence was available to the movant before the nonmovant filed the summary judgment motion, and (4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." *Templet* at 482 (citing *Lavespere* at 174). The foregoing factors are "illustrative and not exhaustive." *Id.*

### III. Analysis

#### A. Southern Natural Gas Company

With regard to SNG, plaintiffs move this Court to consider three categories of additional evidence which plaintiffs contend support reversing SNG's dismissal from this suit. Plaintiffs' primary argument is that first, the Court should consider the corporate deposition of SNG, because at the time of this Court's November 12, 2015 Ruling, plaintiffs "were still awaiting a copy of the transcript of the deposition of SNG which took place on September 22, 2015." [Doc. 600-1, p. 3] Plaintiffs argue they relied to their detriment on "the Court's standing Scheduling Order," which plaintiffs contend permitted them to supplement their opposition "'[w]ithin thirty (30) days from receipt of the transcript of the Southern Natural Gas deposition...'" [Id. at pp. 7, 9] Plaintiffs state they "had requested a copy of the deposition just weeks after it took place and were provided only an electronic transcript via e-mail on October 26, 2015 *without the exhibits*."[4] [Doc. 600-1, p. 3

---

[4] As discussed, *infra*, SNG notes (and plaintiffs do not dispute) plaintiffs had been provided all exhibits referenced at SNG's corporate deposition no later than 2012.

(emphasis in original)] Plaintiffs state they "were awaiting the formal transcript with attached exhibits at the time the Court made its ruling on November 12, 2015." [Id.] According to plaintiffs, they received "the formal transcript with exhibits on November 17, 2015, five days after the Court's ruling." [Id.]

In their opposition to the motion for reconsideration, SNG asserts, "Plaintiffs were not allowed to wait 30 days from the receipt of SNG's deposition to simply submit any new evidence; rather, according to the Court's Scheduling Order, Plaintiffs were given 30 days from receipt of the transcript of SNG's deposition to file any supplemental opposition necessitated by factual information learned during the deposition." [Id. at 3-4 (emphasis omitted)] According to SNG, "[N]one of the factual information regarding dredging was first learned by the Plaintiffs during SNG's deposition." [Id. at 4 (emphasis omitted)] SNG continues, "Plaintiffs have had evidence and known that SNG engaged in dredging activity for years now," and the SNG deposition only put that information in a new form. [Id.] According to SNG, "Plaintiffs are simply attempting to use the Court's Scheduling Order as an excuse for why they did not previously meet their obligation to submit evidence to the Court in response to a motion for summary judgment." [Id.] SNG points out plaintiffs admit they waited "weeks" after the deposition to request a transcript, and admit they received an electronic version of the transcript on October 26, 2015, prior to issuance of this Court's Ruling. SNG contends plaintiffs could have submitted the electronic copy of the deposition to the Court, but chose not to. [Id.]

First, the Court notes its "standing Scheduling Order" was not utilized in this case. Rather, the parties drafted a Case Management Order ("CMO"), which was adopted by the Magistrate Judge on July 14, 2015. The CMO reads in pertinent part:

> Within thirty (30) days from receipt of the transcript of the Southern Natural Gas Company deposition in this matter, Plaintiffs shall file any dispositive motions or supplemental oppositions *necessitated by factual information learned during the deposition.*

[Doc. 537, p. 2 (emphasis added)] At the time of the Court's Ruling, it was unaware of the CMO, and plaintiffs never advised the Court they were awaiting a formal transcript, nor brought this particular provision of the CMO to the Court's attention in any manner. Rather, plaintiffs merely stated in their opposition memorandum they "have reserved the right to supplement this opposition after the deposition of Southern Natural Gas which is set to take place in late September, 2015." [Doc. 594, p. 18 (quoting Doc. 577, p. 3)]

The Court notes defendants filed their reply brief on September 15, 2015, and specifically stated plaintiffs had submitted no evidence in support of their claim against SNG. [Doc. 579, p. 5, n. 5] Plaintiffs took the deposition of SNG seven days later on September 23, 2015, but inexplicably waited weeks thereafter to request a transcript of that deposition. The Notice of Motion Setting (which issued on August 3, 2015) specifically stated the motions would "be decided by the Court on or after its next regular motion date which is September 25, 2015." [Doc. 552] Plaintiffs received an electronic version of the transcript of the deposition on October 26, 2015. The Court did not issue its Ruling until November 12, 2015. At no time before the Ruling issued did plaintiffs ask for additional time to file a supplemental response. Thus, the Court declines to reconsider its dismissal of SNG on the basis that plaintiffs were awaiting a copy of the formal transcript of SNG's deposition at the time this Court issued its Ruling. *See e.g. Molina v. Equistar Chemicals LP*, 261 Fed.Appx. 729, 734 (5th Cir. 2008)(district court did not abuse its discretion when it refused to reconsider summary judgment where plaintiff delayed in taking discovery, delayed in requesting transcripts of

depositions, and failed to ask the court for additional time to file a supplemental response).

The second category of evidence plaintiffs ask this Court to consider is "[t]he documentation offered during the deposition" of SNG, which plaintiffs contend "further bolsters the fact that SNG's canals were dredged." [Doc. 600-1, p. 4] However, SNG responds "it is indisputable that Plaintiffs were in possession of those documents before SNG's deposition took place," as all documents referenced in the deposition had been produced to plaintiffs by July 2012 at the latest. [Id. at 5-6 (emphasis omitted)] Thus, SNG contends plaintiffs could have submitted any of the documents referenced at SNG's deposition in support of their opposition to summary judgment, but failed to do so. As plaintiffs do not dispute they were in possession of all documents referenced at SNG's corporate deposition prior to issuance of this Court's Ruling, the Court declines to reconsider its dismissal of SNG on the basis of those documents. *See e.g. Templet* at 479 ("[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration.")

The final category of additional evidence plaintiffs ask this Court to consider are SNG's responses to plaintiffs' requests for admission, wherein SNG admits the canals at issue "were dredged by dredging vessels." [Doc. 600, p. 6] As SNG points out, its responses were tendered to plaintiffs three days before this Court's Ruling. [Id.] Plaintiffs provide no reason for failing to immediately move to supplement their opposition when they received SNG's responses. [Id.] Thus, the Court finds this is not a basis for reversal of the dismissal of SNG. *Templet* at 479.

In conclusion, the Court finds all of the additional evidence plaintiffs ask this Court to consider was "plainly available or easily discovered before summary judgment." *ICEE* at 848. Plaintiffs do not contest they had copies of all of the documents referenced at SNG's deposition at

least three years prior to submission of their opposition memorandum, but fail to offer any explanation as to why they did not provide that information to this Court in connection with the motion for summary judgment. Plaintiffs offer no explanation for their failure to move to supplement their opposition with SNG's responses the Requests for Admissions prior to issuance of this Court's Ruling. Plaintiffs offer no explanation for their failure to notify this Court in some manner that they purportedly learned "new" factual information during the 30(b)(6) deposition of SNG and would need an extension of time to file supplemental briefing. Accordingly, the Court finds "the facts in this case do not warrant the extraordinary relief associated with the granting of a motion for reconsideration." *Templet* at 479-80.

**B.     Florida Gas Transmission Company**

With regard to Florida Gas, plaintiffs contend during SNG's corporate deposition, "information about Florida surfaced as well," which justifies reconsideration of the dismissal of Florida Gas. [Id. at 7] First, plaintiffs offer a document referenced at SNG's corporate deposition, which was purportedly created in 1963 and entitled, "Memorandum for the Files," which plaintiffs argue creates an issue of material of fact as to whether Florida Gas "did indeed dredge its pipeline canals." [Id.] The portion of the memorandum upon which plaintiffs rely reads as follows: "Jim Hoss, Chief Engineer, Florida Gas Transmission, told me they were very well satisfied with the work that [Robert L. Torres Construction Company] had performed for them. He stated that he thought Sam Carline had performed the dredging work and also furnished some of the pipe laying equipment." [Doc. 600-2, p. 58]

In opposition, Florida Gas asserts the document has been in plaintiffs' possession since 2011 when SNG produced it, and thus, does not constitute newly discovered evidence. [Id. at 2, 3, 4]

Florida Gas further argues the document is unauthenticated, unverified, not authored by anyone at Florida Gas, and does nothing to prove Florida Gas conducted any dredging.[5] [Id. at 2, 4] Further, Florida Gas argues the SNG corporate deponent was not the author of the document, was not asked and did not testify as to whether he had seen the memorandum before, and did not know the individual referenced in the memorandum. [Id. at 4-5]

The Court will not reconsider the dismissal of Florida Gas on the basis of this evidence. Even were the Court to find this document constituted "new evidence," it would not change this Court's prior Ruling. As Florida Gas argues, the document is unauthenticated, and does not indicate, on its face, that Florida Gas conducted any dredging *of the pipelines at issue* in this case.

Plaintiffs next argue SNG's testimony at its corporate deposition creates an issue of fact as to whether Florida Gas conducted dredging based on the following exchange:

> Q. Mr. Shield, if there is still a canal there today that is approximately forty feet wide, would that suggest to you that this was built with a – That there was a dredge boat involved in the initial construction of this line?
>
> . . . .
>
> A. Actually, I have concentrated my efforts on the South Section 28 line when I made the aerial investigations. I didn't look at the laterals because I thought the lawsuit was focused on the South Section 28 line. If there is a canal there, and I'm not saying that there is, that could be an indication.

[Doc. 600-2, p. 6] Florida Gas responds that SNG's corporate representative had no knowledge of,

---

[5]Florida Gas argues to be admissible as summary judgment evidence, documents must be authenticated. [Doc. 615, p. 4] *See e.g. King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence."); *Withrow v. Miller*, 348 Fed.Appx. 946, 947 (5th Cir. 2009)("Unsworn documents generally cannot support a summary judgment motion."); *Templet v. HydroChem Inc.*, 367 F.3d 473, 481 (5th Cir. 2004)(same); *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985)("Documents presented in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 *if there is no objection to their use*.")(emphasis added).

and provided no testimony regarding, Florida Gas's pipelines, or whether Florida Gas had conducted any dredging. Rather, all of his testimony related to SNG's pipelines. [Id. at 2, 6] The Court agrees plaintiffs' reliance upon SNG's deposition testimony is misplaced. The testimony does not indicate Florida Gas dredged the pipeline at issue. The deponent had knowledge of and was addressing SNG's pipeline, not Florida Gas's.

Finally, plaintiffs contend contrary to Court's Ruling, they did submit evidence of Florida Gas's dredging - a photograph of Florida Gas's "pipeline canal, complete with spoil banks." [Id.] With regard to the photograph, it is of such poor quality the Court is unable to determine what it purports to depict. Nevertheless, it is not surprising it allegedly depicts Florida Gas's "pipeline canal, complete with spoil banks." [Doc. 600-1, p. 8] As this Court discussed in its prior Ruling, Florida Gas pointed to evidence showing it did not conduct any dredging, but rather, laid its pipeline into a pre-existing canal. Thus, it is not surprising the photograph allegedly depicts a pipeline canal. Accordingly, the Court finds the photograph is not a valid basis for reversal of its dismissal of Florida Gas.

**IV.    Conclusion**

In light of the reasons provided above, the motion for reconsideration filed on behalf plaintiffs [Doc. 600] is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this __14__ day of March, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE